**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
|     **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | Civil Action No. 3:15-CV-3996-L-BK |
| **REAL PROPERTY KNOWN AS** | § | |
| **2430 GIBBS WILLIAMS ROAD,** | § | |
| **DALLAS, TEXAS** | § | |
|     **Respondent *in rem*.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to District Judge Sam A. Lindsay's *Order of Reference*, Doc. 21, *Plaintiff's Motion for Final Judgment of Forfeiture*, Doc. 20, is now under consideration. For the reasons that follow, Plaintiff's motion should be **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On December 17, 2015, the Government filed a civil forfeiture complaint ("the Complaint") *in rem* on the real property known as 2430 Gibbs Williams Road, Dallas, Texas ("the Property"). Succinctly stated, the Complaint alleges that the Property is subject to forfeiture on the grounds that it (1) is a proceed traceable to an illegal exchange in violation of the Controlled Substances Act, pursuant to 21 U.S.C. section 881(a)(6); (2) was used to facilitate the commission of an offense in violation of the Controlled Substances Act, pursuant to 21 U.S.C. section 881(a)(7); and (3) was involved in a transaction or attempted transaction in violation of 18 U.S.C. section 1956 and/or 1957, or is traceable to such property, pursuant to 18

---

[1] As potential claimants have failed to timely answer, the undersigned accepts the facts alleged by the Government in its Complaint and supporting affidavit as true. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

U.S.C. section 981(a)(1)(A).  Doc. 1 at 3.  The more substantive facts are contained in the affidavit of DEA Agent Marcus West, attached to the Complaint, which describes the Property as a methamphetamine-trafficking hub for Oscar Soto-Cabezas, a member of the Jalisco New Generation Cartel.  *See* Doc. 2-1 at 2-3.  Additionally, Agent West avers that while Dalia Espinoza is listed as the current owner of the Property, her husband, Nicolas Salinas, actually purchased the Property on behalf, and at the request, of Soto-Cabezas.  Doc. 2-1 at 3.  Thus, the Complaint identifies Espinoza, Salinas, and Soto-Cabezas as potential claimants to the Property. Doc. 1 at 2.

Two days after the Complaint was filed, in accordance with the Supplemental Rules for Certain Admiralty Maritime Claims[2] ("the Supplemental Rules"), notice of the forfeiture was published on an official government website, www.forfeiture.gov, for at least 30 consecutive days.  *See* Doc. 10; Doc. 10-1.  Later that month, the United States Marshal Service ("USMS") posted a Public Notice of Complaint for Forfeiture and Execution of Process on the Property. *See* Doc. 6.  In January 2016, Espinoza was personally served by the USMS, *see* Doc. 7; Salinas, who is currently under the control of the Bureau of Prisons, received notice a few days later when the USMS served Correction Officer Jones on his behalf, *see* Doc. 9.  Service was more difficult to effectuate on Soto-Cabezas, whose whereabouts, after being declared a fugitive by the DEA, were unknown.  Doc. 11 at 2.  Accordingly, the Government filed a *Motion for Order to Serve*, Doc. 11, requesting that the court deem Soto-Cabezas constructively served under 18 U.S.C. section 985(c)(2)(A)[3] and Texas state law, by reason of the notice posted on

---

[2] The Supplemental Rules apply to civil forfeiture proceedings.  *See* 18 U.S.C. § 983(a)(3).
[3] Under 18 U.S.C. section 985(c)(2)(A), if a property owner cannot be served with notice under section 985(c)(1)(C) because the owner is a fugitive, "constructive notice may be made in accordance with the law of the State in which the property is located."

www.forfeiture.gov.  Doc. 11.  On the basis of the notice posted at the Property and on the government website, the Court deemed service on Soto-Cabezas completed.  Doc. 12.

In February 2016, Dallas County, Texas, Parkland Hospital District, Dallas County Community College District, Dallas County School Equalization Fund, Dallas I.S.D., and City of Dallas (collectively, "the Taxing Authorities") filed an answer to the Complaint in which they asserted an interest in the Property, specifically for *ad valorem* taxes, penalties, and interest.  *See* Doc. 13; Doc. 15.  In July 2016, the Government and the Taxing Authorities entered into joint stipulation, which recognized the Taxing Authorities' interest in the Property.  Doc. 17.

Since that time, neither Espinoza, Salinas, nor Soto-Cabezas has filed a claim or answered the Complaint.  Furthermore, the deadline for any other potential claimants to file a claim to the Property has expired.  *See* Supp. R. G(5)(a)(ii)(B) (person asserting interest in the property must file a claim either within 30 days after the government sends notice, or no later than 60 days after the first day of publication on an official internet government forfeiture site).

On August 8, 2016, pursuant to the Government's request, the Clerk of Court entered a default against Espinoza, Salinas, Soto-Cabezas, and any and all unknown possible claimants in this action.  Doc. 18; Doc. 19.  Through the motion *sub judice*, the Government now asks that the Property be forfeited to the United States of America pursuant to 21 U.S.C. sections 881(a)(6) and (7), and 18 U.S.C. section 981(a)(1)(A).  Doc. 20 at 3.

## II. JURISDICTION

This Court has subject matter jurisdiction over this case under 28 U.S.C. section 1345 and 1355(a)-(b), which vests district courts with original jurisdiction in "any action or proceeding for the . . . enforcement of any . . . forfeiture . . . incurred under any Act of Congress."  28 U.S.C. § 1355(a).

### III. LEGAL STANDARD

**A. Default Judgment**

The conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment, are found in Rule 55 of the Federal Rules of Civil Procedure.  The entry of default judgment is the culmination of three events: (1) default, which occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure; (2) entry of default by the clerk of court when such default is established by affidavit or otherwise; and (3) application by plaintiff to the clerk for a default judgment after the entry of default.  FED. R. CIV. P. 55(a); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

Standing alone, however, a defendant's default does not entitle a plaintiff to a default judgment.  *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam); *Nishimatsu Constr. Co.*, 515 F.2d at 1206.  The decision to grant a default judgment is one soundly within the district court's discretion.  *Lewis*, 236 F.3d at 767.  "[D]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Id.* (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n.*, 874 F.2d 274, 276 (5th Cir. 1989)). There must be a sufficient basis in the pleadings for a court to enter judgment by default. *Nishimatsu Constr. Co.*, 515 F.2d at 1206.  In defaulting, defendants, by virtue of having a default entered against them, are deemed to have admitted the well-pleaded allegations of the complaint and are precluded from contesting the established facts.  *Id.* (citations omitted).

## IV. DISCUSSION

**A. Notice**

A judgment of forfeiture may not be entered unless the Government has appropriately provided notice.  SUPP. R. G(4)(a)(i).  Notice of the action must be published "within a reasonable amount of time after filing the complaint or at a time the court orders."  *Id.* Publication may be done by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days."  *Id.* at G(4)(a)(iv)(C).  Additionally, the Government must also "send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government."  *Id.* at G(4)(b)(i).  This notice must state the date it was sent; the deadline for filing a claim and answer; and the name of the government attorney to be served with the claim and answer.  *Id.* at G(4)(b)(ii).

Here, based on the facts set forth above, the Court concludes that the Government complied with these requirements by reason of (1) the notice posted at the Property; (2) personal service on Espinoza and Salinas; (3) constructive service on the fugitive Soto-Cabezas; and (4) publication of the notice on www.forfeiture.gov for at least 30 consecutive days.

**B.  Sufficiency of the Complaint**

Under the Civil Asset Forfeiture Reform Act ("CAFRA"), which governs all federal forfeiture proceedings, the Government bears the initial burden of establishing by a preponderance of the evidence that the property is subject to forfeiture.  18 U.S.C. § 983(c)(1). As stated above, the Government contends the Property is subject to forfeiture because it (1) is a proceed traceable to an illegal exchange in violation of the Controlled Substances Act, (2) facilitated the commission of an offense in violation of the Controlled Substances Act, and (3) was involved in an attempted transaction in violation of 18 U.S.C. sections 1956 and/or  1957, or

is traceable to such property.  Doc. 1 at 3.  Where, as here, one of the Government's theories of forfeiture is that "the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense," the Government must establish a "substantial connection" between the property and offense.  18 U.S.C. § 983(c)(3). Additionally, under the Supplemental Rules, the complaint in a forfeiture action *in rem* arising from a federal statute must be verified; state the grounds for subject matter jurisdiction, in rem jurisdiction over the property, and venue; describe the property with reasonable particularity; identify the statute under which the forfeiture action is being brought; and state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. SUPP. R. G(2).

In December 2015, the Government filed a verified complaint, which sufficiently identifies the Property and asserts the proper grounds for subject matter jurisdiction, venue, and the statutes under which forfeiture is sought.  Doc. 1 at 1-2.  Moreover, there are stated sufficient detailed facts to support a reasonable belief that that the Government will be able to meet its burden of proof at trial.  SUPP. R. G(2)(f).

Supplemental Rule E(2) establishes the standard of factual particularity for forfeiture complaints filed under Supplemental Rule C.  That Rule provides that "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite state, to commence an investigation of the facts and to frame a responsive pleading."  SUPP. R. E(2)(a).  Thus, the Supplemental Rules "require more definite and specific averments in a complaint than the simple 'notice pleading'" of the Federal Rules of Civil Procedure." *In re Ramu Corp.*, 903 F.2d 312, 317 n.7 (5th Cir. 1990).

In the instant case, the Complaint merely recites the statutory requirements for liability under 21 U.S.C. section 881(a)(6) and (7), and 18 U.S.C. section 981(a)(1)(A).[4]  *See U.S. Pole No. 3172, Hopkinton*, 852 F.2d 636, 638-39 (1st Cir. 1988) (citing the "peculiar stringency" of Supplement Rule E(2)(a), the court found the factual allegations in a complaint insufficient where the government "merely described the property, and, parroting the language of the statute, stated that it was forfeitable as proceeds of a drug transaction").  However, Agent West's affidavit, which is attached to and incorporated by the Complaint, contains the necessary factual particulars, and supports a reasonable belief that the Government will be able to meet its burden of proof at trial.  SUPP. R. G(2)(f); *see U.S. v. One Parcel of Real Property*, 921 F.2d 370, 376 n.10 (5th Cir. 1990) ("Courts may consider attached affidavits incorporated into the forfeiture complaint.") (citing *U.S. v. Parcels of Land*, 903 F.2d 36, 48 (5th Cir. 1990)).

Specifically, Agent West's affidavit details Soto-Cabezas' involvement in the Jalisco New Generation Cartel, and his use of the Property in the cartel's drug operation.  Agent West details the investigation, which uncovered evidence that (1) Salinas purchased the Property with drug proceeds at Soto-Cabezas' request; (2) the Property was purchased to evade police

---

[4] The operative paragraph in the Complaint states:

> "As more fully set forth in the Verification Affidavit of Special Agent March West . . . the [Property] is subject to forfeiture pursuant to 21 U.S.C. §§ 881(a)(6) and (7) because the property constitutes proceeds traceable to the exchange of a controlled substance or listed chemical in violation of Subchapter One, Chapter 13, Title 21, United States Code, and/or was used or intended to be used in any manner or part to commit or to facilitate the commission of a violation of Subchapter One, Chapter 13, Title 21 United States Code.  The [Property] is also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because the property was involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957, or is traceable to such property."

Doc. 1 at 3.

detection; (3) methamphetamine was transported from Mexico to the Property, whereupon it was subsequently unloaded, prepared, distributed, and stored; and (4) proceeds from the sale of methamphetamine were stored at the Property.  Doc. 2-1 at 2-4.  Agent West's affidavit also discusses a May 2014 operation targeting the Soto-Cabezas' drug organization that resulted in the arrest of five individuals and the seizure of "approximately 100 pounds of methamphetamine; two active methamphetamine labs; approximately $100,000; one bulletproof vest; drug ledgers; 12 firearms; and six vehicles."  Doc. 2-1 at 3.  Four of the five individuals, including Soto-Cabezas, were later indicted for Conspiracy to Possess with the Intent to Distribute 500 grams or more of Methamphetamine (in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)).  Additionally, two properties associated with Soto-Cabezas, including the Property, were federally indicted.  Doc. 2-1 at 4.

These facts permit the Court to reasonably infer a substantial connection between the Property and the violations the Government alleges, therein warranting forfeiture of the Property as proceeds, property traceable to proceeds, or as property intended to be used to facilitate other violations of the Controlled Substances Act.

### C. *Lindsey* Factors

The Court of Appeals for the Fifth Circuit has delineated factors a district court may consider in determining whether to grant a default judgment: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith, mistake, or excusable neglect; (5) the harshness of default judgment; and (6) whether the court would be obligated to set aside a default on the defendant's motion.  *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).  Consideration of these factors weigh in favor of default judgment.

Here, the factual requisites for forfeiture have been satisfied, as discussed *supra*. Moreover, the grounds for default have been clearly established: all potential claimants were legally and properly notified of their right to file a claim to the Property, the deadline for doing so and the consequences of failing to do so, as required by the Federal Rules of Civil Procedures and the Supplemental Rules. Given the time that has since elapsed, there is nothing to indicate that the failure of Espinoza, Salinas, Soto-Cabezas, or any other claimants to file a claim or answer was due to good faith, mistake, or excusable neglect.

There also is nothing to suggest that the Court would be obligated to set aside a default judgment on any potential claimant's motion. An entry of default may be set aside under Rule 55(c) – for "good cause" – or Rule 60(b) – for reasons of mistake, surprise, or excusable neglect. FED. R. CIV. P. 55, 60. Invocation of either Rule would require the court to examine (1) whether the default was willful, (2) whether setting the default aside would prejudice the Government, and (3) whether a meritorious defense is presented. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992). While Espinoza, Salinas, and Soto-Cabezas were notified of the Government's forfeiture action and given an opportunity to appear, neither has made any effort to do so. Given such inaction, their failure to file a claim appears willful. Additionally, setting aside the default judgment would "impair operation of the forfeiture process." *U.S. v. $18,592.00 of $35,037.00 in U.S. Currency*, No. 3:12-CV-1134-M, 2013 WL 3095519, at *6 (N.D. Tex. June 20, 2013) (Lynn, J.).

Finally, there is no indication that the any potential claimant has a meritorious defense sufficient to create "some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *In re OCA, Inc.*, 551 F.3d 359, 373 (5th Cir. 2008)

(citation, internal quotation marks, and alterations omitted). Thus, the *Lindsey* factors weight in favor of a default judgment.

## V. CONCLUSION

In light of the foregoing, *Plaintiff's Motion for Final Judgment of Forfeiture*, Doc. 20, should be **GRANTED**, and that the real property known as 2430 Gibbs Williams Road Dallas, Texas, should be forfeited to the United States of America pursuant to 21 U.S.C. §§ 881(a)(6) and (7), and 18 U.S.C. § 981(a)(1)(A).

**SO RECOMMENDED** on February 6, 2017.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE